## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-81023-MIDDLEBROOKS

YOLETTE SANGUINETTI,

    Plaintiff,

v.

JPMORGAN CHASE BANK
NATIONAL ASSOCIATION,

    Defendant.

_____/

### ORDER ON DEFENDANT'S MOTION TO DISMISS

THIS CAUSE comes before the Court upon Defendant JPMorgan Chase Bank, N.A.'s
Motion to Dismiss, filed July 27, 2020. (DE 15). Plaintiff Yolette Sanguinetti, appearing *pro se*,
responded on August 10, 2020 (DE 19). Defendant did not reply. For the following reasons, the
Motion is granted.

### I.     BACKGROUND

This lawsuit arises out of a mortgage foreclosure action in state court and Defendant's
alleged conduct leading up to and during those proceedings. The Complaint contains 16 pages
dedicated to factual allegations, and additional allegations are scattered throughout the lengthy
document. As such, included here are only the facts most relevant to resolving this Motion to
Dismiss.

On September 15, 2004, Plaintiff alleges that she "did not sign a mortgage application for
$450,000 with Washington Mutual Bank" and that she "did not sign a Deed-of-Trust." (DE 1 13–
14 ¶¶ 7–11). On September 25, 2008, Washington Mutual Bank, FA failed, went into Federal
Deposit Insurance Corporation ("FDIC") receivership, and Defendant purchased its assets. (DE 1

at 14 ¶¶ 12–13). On July 21, 2009, Defendant filed a foreclosure action against Plaintiff in state court that ultimately resulted in a final judgment of foreclosure on November 2, 2018.[1] (DE 1 at 14 ¶¶ 14, 37, 63). That same month, Plaintiff appealed the state court judgment, which was affirmed *per curium* on April 16, 2020. (DE 1 at 27–28 ¶¶ 69, 72). Plaintiff sought a discretionary appeal from the Florida Supreme Court, which was dismissed on May 27, 2020. (DE 1 at 28 ¶¶ 75–77).

In this lawsuit, Plaintiff alleges that Defendant violated numerous state and federal laws in connection with the residential foreclosure action that ultimately resulted in a final judgment of foreclosure. (DE 1 at 45 ¶ 164). Specifically, Plaintiff seeks to bring 28 causes of action against Defendant in a 167-page filing, comprised of a 150-page Complaint and 17 pages of attached exhibits. (DE 1). Plaintiff articulates these 28 counts as: (1) lack of jurisdiction – constitutional violation of art. V and XIV; (2) lack of jurisdiction – subject matter and no standing; (3) insufficient verification; (4) lack of jurisdiction – constitutional violation of art. VI, cl. 2; (5) lack of jurisdiction over the person; (6) lack of jurisdiction – improper venue; (7) lack of jurisdiction – insufficient process; (8) frivolus [sic]; (9) negligence; (10) wrongful foreclosure; (11) violation of the Fair Debt Collection Practices Act; (12) violation of Real Estate Settlement Procedures Act; (13) violation of Truth in Lending Act; (14) fraud; (15) mortgage fraud; (16) notary fraud; (17) forgery of plaintiff signature; (18) forgery – robo-signer; (19) violation of Identify Theft and Assumption Deterrence Act; (20) breach of fiduciary duty; (21) fraud – unclean hands; (22) financial exploitation of an elderly person or a person with a disability; (23) RICO violations –

---

[1] The state court originally entered judgment in June 2018; however, that judgment was amended, resulting in the November 2, 2018 foreclosure judgment discussed in this Order. (DE 1 at 14 ¶¶ 60–68).

2

racketeering; (24) emotional distress; (25) slander of title; (26) quiet title; (27) unjust enrichment; and (28) code of federal regulations, breach of contract – hud violations.

In its Motion to Dismiss, Defendant argues that the Complaint fails to comply with the pleading requirements set forth in Rule 8 and amounts to an impermissible "shotgun pleading." (DE 15 at 1, 5). Defendant also contends that each of Plaintiff's claims is barred on one or more of the following grounds: the *Rooker-Feldman* Doctrine, Florida's litigation privilege, *res judicata*, the compulsory counterclaim rule, the Full Faith and Credit Act, 28 U.S.C. § 1738, and the cause of action's applicable statute of limitations. (*Id.* at 6–19). In her Response, Plaintiff disagrees with these arguments. (DE 19 at 7–10).

## II.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the allegations in a complaint. *See* Fed. R. Civ. P. 12(b)(6). In assessing legal sufficiency, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570).[2] "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)).

---

[2] "A court's review on a motion to dismiss is [generally] 'limited to the four corners of the complaint.'" *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (citation omitted). However, it may also consider "any documents referred to in the complaint which are central to the claims." *Id.* (citation omitted).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and assume the truth of the plaintiff's factual allegations. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). However, pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 678; *see also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (stating that an unwarranted deduction of fact is not considered true for purposes of determining whether a claim is legally sufficient). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "Factual allegations must be enough to raise [the plaintiff's] right to relief above the speculative level." *Id.*

"At the same time, . . . '*pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'" *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citation omitted). Accordingly, when determining whether a *pro se* complaint has stated a claim, "the court ought not penalize the litigant for linguistic imprecision in the more plausible allegations." *Id.* Courts, however, will not take the plaintiff's "wildly implausible allegations" as true. *Id.*

## III.   DISCUSSION

### A.   Short and Plain Statement and Impermissible "Shotgun" Pleading

As a threshold matter, Defendant moves to dismiss the Complaint in its entirety as a "shotgun pleading." (DE 15 at 5–6). Plaintiff contends that her Complaint does not meet the definition of a shotgun pleading and that "[i]f it appears to be repetitive, that is because everything

[Defendant] has done is embedded in fraud and deception . . . ." (DE 19 at 7). I find that the Complaint constitutes a shotgun pleading.

A "shotgun pleading" refers to a complaint that violates Rule 8(a)(2), which requires a plaintiff to include a "short and plain statement of the claim," or Rule 10(b), which requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P 8(a)(2), 10(b); *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has identified four categories of shotgun pleadings: (1) complaints "containing multiple counts where each count adopts the allegations of all preceding counts;" (2) complaints that are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;" (3) complaints that fail to separate each cause of action or claim for relief into different counts; and (4) complaints that assert "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1321–23. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

Here, the Complaint—which is 167 pages long (including 17 pages of attached exhibits) and contains 582 paragraphs—falls within the second *Weiland* category of shotgun pleadings in that it is "replete with conclusory, vague, and immaterial facts" and thereby fails to comply with Federal Rule of Civil Procedure Rule 8(a). *See Weiland*, 792 F.3d at 1321–23; *see also Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1296 n.9 (11th Cir. 2002) (describing shotgun pleadings as "complete with rambling recitations and factual allegations that

could not possibly be material that force the district court to sift through the facts presented and decide for itself which were material to the particular cause of action asserted.") (internal citations and quotations omitted). Plaintiff also sets forth 16 pages of facts which she apparently intended to apply in one way, shape, or form to each of her 28 counts, leaving to the Court the task of determining which facts applied to which counts. (DE 1 at 7–28 ¶¶ 1–78). *Jackson v. Bank of America N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018) (describing 28-page, 123-paragraph long complaint as an "incomprehensible shotgun pleading" that "patently violates" Rule 8 by employing "a multitude of claims and incorporat[ing] by reference all of its factual allegations into each claim, making it nearly impossible for Defendant[] and the Court to determine with any certainty which factual allegations give rise to which claims for relief").

This Complaint is therefore dismissed as a shotgun pleading. However, it is apparent from the allegations in the Complaint that some of Plaintiff's claims are subject to dismissal on the merits and therefore should not be included in any forthcoming amended complaint should Plaintiff choose to attempt to re-plead her claims. Accordingly, given Plaintiff's *pro se* status, and in the interest of resolving this matter as expeditiously as possible, I address below the substantive bases for dismissal of several of Plaintiff's claims.

**B.     Claims Barred by the *Rooker-Feldman* Doctrine**

Defendant argues that Plaintiff's Complaint should also be dismissed in its entirety pursuant to the *Rooker-Feldman* doctrine because "each of Plaintiff's claims are expressly, inextricably intertwined" with the 2004 loan that ultimately led to the entry of the state foreclosure judgment that was affirmed on appeal. (DE 15 at 6). Plaintiff maintains that the doctrine does not apply because, although she "is seeking to relitigate an issue determined in a state case," she is

"[s]eeking relief that is inconsistent with the state-court judgment," rather than modification or vacatur of same. (DE 19 at 8).

The *Rooker-Feldman* doctrine precludes a party against whom a state court has entered an adverse judgment from seeking review and reversal of that judgment in federal district court. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005) (discussing the narrow applicability of the doctrine under the seminal cases that created it, *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983)). The doctrine applies only when two conditions are met: (1) the federal court plaintiff "litigated and lost in state court"; and (2) the federal complaint essentially invites the district court to review and reverse the unfavorable state-court judgment. *Id.* The Eleventh Circuit has added the subtle wrinkle that the *Rooker-Feldman* doctrine bars "jurisdiction where the issue before the federal court [i]s 'inextricably intertwined' with the state court judgment so that (1) the success of the federal claim would 'effectively nullify' the state court judgment, or that (2) the federal claim would succeed 'only to the extent that the state court wrongly decided the issues.'" *Alvarez v. Att'y Gen. for Fla.*, 679 F.3d 1257, 1262-64 (11th Cir. 2012) (citing *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009)). Because the doctrine is predicated on the longstanding principle that federal district courts "are empowered to exercise original, not appellate, jurisdiction," with the authority "to reverse or modify a state-court judgment lodged . . . by 28 U.S.C. § 1257 exclusively in" the United States Supreme Court, federal district courts may properly dismiss cases that come within the *Rooker-Feldman* doctrine's ambit for lack of subject matter jurisdiction. *Id.* at 283–84.

Here, I find that Plaintiff's action meets the criteria to trigger the *Rooker-Feldman* doctrine as a jurisdictional bar because: (1) Plaintiff litigated and lost in state court when the foreclosure judgment was entered against her; and (2) Plaintiff essentially is asking this Court to review the

legal propriety of the state court foreclosure order and grant her relief therefrom. Plaintiff's request that this Court so act is most apparent with respect to her first eight counts: Count 1, lack of jurisdiction – constitutional violation of art. V and XIV; Count 2, lack of jurisdiction – subject matter and no standing; Count 3, insufficient verification; Count 4, lack of jurisdiction – constitutional violation of art. VI, cl. 2; Count 5, lack of jurisdiction over the person; Count 6, lack of jurisdiction – improper venue; Count 7, lack of jurisdiction – insufficient process; and Count 8, frivolous.

In Counts 1–2 and 4–7, (the "Jurisdictional Counts"), Plaintiff alleges that the state court exceeded its authority by conducting the foreclosure proceedings and entering a final judgment because it acted without jurisdiction and thereby violated her constitutional rights. (DE 1 at 28–37 ¶¶ 39–45, 79–122, 132–63). In Count 3, "Insufficient Verification," Plaintiff alleges that Defendant's state court complaint failed to meet the pleading standard for foreclosure actions because it was not verified. (DE 1 at 37–39 ¶¶ 123–31). In Count 8, Plaintiff reproduces numerous paragraphs of the state court complaint and alleges that the state court action brought by Defendant against her was frivolous. (DE 1 at 45–50 ¶¶ 164–84). To rule on any of these counts on the merits would require this Court to functionally sit in review of the state foreclosure judgment and the appellate court's affirmance thereof. This is squarely prohibited by the *Rooker-Feldman* doctrine. Accordingly, in the absence of subject matter jurisdiction as to Counts 1–8, I conclude that they must be dismissed with prejudice.

In addition to these eight, Defendant contends that all of Plaintiff's remaining counts are also dismissible pursuant to the *Rooker-Feldman* doctrine because "Plaintiff's allegations regarding the validity of the Subject Loan form the basis of every single cause of action," and for this reason, "each claim is inextricably intertwined with the matters litigated" in the state

proceedings. (DE 15 at 9). Careful review of Plaintiff's 167-page Complaint reveals that this is accurate. Distilled to their essence, each of Plaintiff's remaining 20 counts could only succeed to the extent that I determine that the state court erroneously found that the 2004 loan was valid. Such a finding, which is "inextricably intertwined" to the state court judgments adverse to her, would in effect render the foreclosure judgment, and the state appellate court's affirmance of it, a nullity. I therefore find that the *Rooker-Feldman* doctrine likely bars Plaintiff's action on the whole. Nevertheless, as discussed below, many of the remaining counts are also dismissible on other grounds, which I will address in turn.

### C.    Time-Barred Claims

Although a statute of limitations bar is an affirmative defense, and a plaintiff is not required to negate an affirmative defense in its complaint, "a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate . . . if it is apparent from the face of the complaint that the claim is time-barred." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845-46 (11th Cir. 2004) (citing *Omar v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir. 2003) (internal quotation marks omitted). Accordingly, as explained more fully below, I dismiss with prejudice any claim that, on the face of the Complaint, is noncompliant with the applicable statute of limitations. In so doing, I am mindful that a *pro se* litigant ordinarily should be afforded an opportunity to amend her complaint. *See Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1254 (11th Cir. 2017). However, if amending certain claims would be futile—meaning that the claims "as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant"—then it is appropriate to dismiss those claims without permitting the plaintiff leave to amend. *Id.* (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)) (internal quotation marks omitted).

### 1.    Negligence (Count 9)

In Count 9, Plaintiff alleges that her 2004 loan closing was negligently mishandled. (DE 1 at 50–60 ¶¶ 185–233). Under Florida law, "[a]n action founded on negligence" shall be commenced within four years. Fla. Stat. § 95.11(3)(a). Because the complained-of conduct allegedly occurred prior to or on the loan closing date, which Plaintiff identifies as September 15, 2004, Plaintiff's negligence claim is time-barred by approximately twelve years. (DE 1 at 54 ¶ 209). Permitting Plaintiff to amend this claim would be futile, as even an amended claim would be properly dismissed. Accordingly, I dismiss Count 9 with prejudice.

### 2.    Violation of the Fair Debt Collection Practices Act (Count 11)

In Count 11, Plaintiff appears to allege, in a series of conclusory assertions, that Defendant violated various provisions of the Fair Debt Collection Practices Act ("FDCPA") in connection with the state foreclosure proceedings, which culminated in a final judgment of foreclosure on November 2, 2018. (DE 1 at 24–25, 68 ¶¶ 60–63, 271–73). A plaintiff may bring a civil action against a debt collector for violations of the FDCPA "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(a), (d). "[A]bsent the application of an equitable doctrine, the statute of limitations in § 1692k(d) begins to run on the date on which the alleged FDCPA violation occurs, not the date on which the violation is discovered." *Rotkiske v. Klemm*, 140 S. Ct. 355, 357 (2019). Here, Defendant's alleged violations of the FDCPA provisions occurred on or before entry of the foreclosure judgment in the state court proceedings in November 2018. Given that more than one year has elapsed since the latest date on which the alleged violations could have occurred, Plaintiff's claim would remain properly dismissible even if she amended the Complaint. Accordingly, I dismiss Count 11 with prejudice.

### 3.    Violation of the Real Estate Settlement Procedures Act (Count 12)

In Count 12, Plaintiff alleges that Defendant violated § 2605(e) of the Real Estate Settlement Procedures Act ("RESPA") by ignoring "qualified written requests" ("QWRs") made by Wellington Aero Club Homeowner's Association, Inc. ("Homeowner's Association"), who was also a defendant in the underlying foreclosure action, and ignoring QWRs made by Plaintiff. (DE 1 at 71 ¶¶ 274–78). In support of her allegation as to the Homeowner's Association, Plaintiff cites to "Exhibit 1," which is not a QWR but rather a copy of the Homeowner's Association's August 13, 2009 Answer to the complaint filed in the state court foreclosure proceeding. (DE 1 at 71 ¶ 276; DE 1 at 166). Based on the document marked Exhibit 1, the Court cannot definitively infer when the Homeowner's Association submitted their QWRs or when Defendant allegedly failed to respond to them. The Court can only infer that Plaintiff, by directing the Court to this document, seeks to establish that any violation occurred prior to or on the date that the Homeowner's Association filed its Answer.

Plaintiff also alleges that her "written requests for proper proof of claim regarding her purported mortgage note and identification of numerous defects were 'qualified written requests' within the meaning of RESPA" and that Defendant's failure to respond "in a proper and timely way to [such requests]" violated § 2605(e). (DE 1 at 71 ¶¶ 277–78). In this Count, Plaintiff does not state precisely when she submitted these purported QWRs; however, she alleges elsewhere in her Complaint that "[o]n or around September 1, 2009, [Plaintiff as] the Defendant in the foreclosure lawsuit submitted answers and demanded strict proof" of the note and mortgage and that "[o]n or around October 24, 2013," Plaintiff filed for bankruptcy and during those proceedings, she "demanded that [Defendant] provide Proof of Claim and return of funds." (DE 1 at 22 ¶ 43; DE 1 at 23 ¶¶ 48–50).

The RESPA provides that "[a]ny action pursuant to the provisions of section 2605 . . . may be brought . . . within 3 years in the case of a violation of section 2605 . . . from the date of the occurrence of the violation . . . ." 12 U.S.C. § 2614. In light of the timeline I can deduce from the face of the Complaint and the document to which Plaintiff cites marked Exhibit 1, the limitations period for Plaintiff's RESPA claim began to run prior to 2009 as to the Homeowner's Association's QWRs and at the latest in 2013 as to Plaintiff's alleged QWRs. Accordingly, Plaintiff's § 2605(e) action as to the Homeowner's Association's QWRs should have been brought no later than 2012, and any action in connection with Plaintiff's purported QWRs should have been brought no later than 2016. Because Plaintiff did not bring such claims before the expiration of the limitations period, I conclude that the RESPA count is time-barred.

In addition to arguing that Plaintiff's RESPA claim is time-barred, Defendant submits that this claim should also be dismissed because Plaintiff lacks standing to assert it with respect to the allegedly ignored QWRs submitted by the Homeowner's Association. (DE 15 at 13). Section 2605(e) provides that "[i]f any servicer of a federally related mortgage loan receives a qualified written request from *the borrower (or an agent of the borrower)* for information relating to the servicing of such loan, the servicer shall provide a written response . . . ." 12 U.S.C. § 2605(e)(1)(A) (emphasis added). Because Plaintiff does not assert that the Homeowner's Association was her agent when it submitted the QWRs, Plaintiff cannot plausibly state a claim that the Homeowner's Association's QWRs placed Defendant under an obligation to respond to Plaintiff. In fact, Plaintiff's Complaint and Exhibit 1 attached thereto indicate that the Homeowner's Association may very well have been inquiring on their own behalf, given that they were also a party to the state foreclosure lawsuit. (DE 1 at 71 ¶ 276; DE 1 at 166). And if Defendant was under no obligation to respond to Plaintiff concerning the Homeowner's Association's

requests, then Plaintiff would not have the requisite standing to state a cause of action under §

2605(e) for Defendant's failure to respond to same. Section 2605(f) provides that "[w]hoever fails

to comply with any provision of [§ 2605] shall be liable to the borrower . . . ." 12 U.S.C. § 2605(f).

Again, taking Plaintiff's allegations as true and viewing them in the light most favorable to her,

Plaintiff fails to allege facts that could suggest that Defendant is liable to her for its purported

failure to respond to the Homeowner's Association requests. However, even if Plaintiff were to

allege in an amended complaint that the Homeowner's Association was acting as her agent,

because I find that this claim is time-barred, such amendment would be futile. Therefore, this count

must be dismissed with prejudice.

### 4.    Truth in Lending Act Violations (Count 13)

In Count 13, Plaintiff alleges that Defendant violated § 1641(g) of the Truth in Lending

Act ("TILA") by failing to notify Plaintiff that it had become her loan servicer upon acquiring her

original lender Washington Mutual Bank, FA. (DE 1 at 72–73 ¶¶ 279–82). Plaintiff states that this

acquisition occurred on September 25, 2008 when Washington Mutual Bank, FA failed, went into

FDIC receivership, and Defendant purchased its assets. (DE 1 at 14 ¶¶ 12–13).

Pursuant to the TILA, a borrower may seek to recover actual and statutory damages caused

by a creditor's failure to make required disclosures "within one year from the date of the

occurrence of the violation . . . ." 15 U.S.C. § 1640(a), (e). TILA violations occur "when the

transaction is consummated," and thus nondisclosure thereafter does not constitute "a continuing

violation for purposes of the statute of limitations." *Cooper v. Countrywide Home Loans*, 724 Fed.

App'x 741, 744 (11th Cir. 2018) (quoting *In re Smith*, 737 F.2d 1549, 1552 (11th Cir. 1984))

(internal quotation marks omitted). Here, the violation, described by Plaintiff as Defendant's

alleged failure to provide Plaintiff with notice of its acquisition of her note and mortgage, occurred

on or around September 25, 2008 when Defendant acquired Plaintiff's loan from the FDIC receivership. Because more than one year has passed since this transaction was consummated— indeed, more than a decade has elapsed—Plaintiff's TILA claim is time-barred. As such, granting Plaintiff leave to amend this count would be futile. Therefore, I dismiss Count 13 with prejudice.

### 5.   Fraud (Counts 14–18, 21)

In Counts 14 through 18 and 21 (the "Fraud Counts"), Plaintiff brings several causes of action premised on allegations of fraud: fraud (Count 14), mortgage fraud (Count 15), notary fraud (Count 16), forgery in signature (Count 17), notary fraud (Count 18), and fraud – unclean hands (Count 21). (DE 1 at 73–99 ¶¶ 283–390). Defendant argues that the Fraud Counts should be dismissed because they fail to comply with Rule 9's heightened pleading requirements and because they are all time-barred.[3] (DE 15 at 15). Plaintiff contends that her fraud claims are not time-barred because "four years has not expired since the amended judgment of foreclosure was submitted on March 27, 2017." (DE 12 at 9).

Under Florida law, "a legal or equitable action founded on fraud" shall be commenced within four years. Fla. Stat. § 95.11(3)(j). The limitations period for an action premised upon alleged fraud under § 95.11(3) begins to run "from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence." Fla. Stat. § 95.031(2)(a). "[B]ut in any event an action for fraud . . . must be begun within 12 years after the date of the commission of the alleged fraud, regardless of the date the fraud was or should have been discovered." *Id.*

---

[3] Because I find that the Fraud Counts are time-barred and thereby subject to dismissal, I need not analyze whether Plaintiff's allegations meet the heightened pleading requirements prescribed by Rule 9.

a.      **Fraud (Count 14), Mortgage Fraud (Count 15), and Fraud –
Unclean Hands (Count 21)**

In Count 14, Plaintiff alleges that Defendant made fraudulent misrepresentations to the

state court in its complaint in the foreclosure action because "Defendants knew that there was no

contract yet misrepresented to the court that they had an original "'wet Ink [sic]' note and

mortgage." (DE 1 at 73–74 ¶¶ 284–85). In Count 15, Plaintiff alleges that Defendant's act of

bringing the foreclosure action constituted mortgage fraud because Defendant "knowingly and

maliciously engaged in numerous misrepresentations of the truth and concealed material facts in

order to judicially foreclose on Plaintiff's property." (DE 1 at 76 ¶ 304). In Count 21, Plaintiff

alleges that Defendant defrauded the state court "when they manufactured mortgage loan

documents in order to legally come into equity." (DE 1 at 106 ¶ 409).

Plaintiff asserts that "[o]n or around July 21, 2009[, Defendant] filed a frivolous foreclosure

lawsuit." (DE 1 at 20 ¶ 37). In response to this "frivolous" lawsuit, Plaintiff states that "[o]n

September 1, 2009 [she] . . . submitted answers and demanded . . . dismissal with prejudice based

on . . . fraud and unclean hands." (DE 1 at 22 ¶ 43). Though Plaintiff argues that the statute of

limitations should not apply to bar her claims based on fraud because the amended judgment of

foreclosure was not entered until March 27, 2017, the limitations period began to run *when Plaintiff*

*discovered or should have discovered* the facts giving rise to the cause of action, not when the

judicial proceedings at which these acts allegedly occurred culminated. According to a

straightforward reading of Plaintiff's own allegations, she discovered what she alleges constitutes

fraudulent misrepresentations to the state court and mortgage fraud on the part of Defendant

shortly after Defendant filed its complaint in the state foreclosure action. (*See* DE 1 at 22 ¶ 43). As

such, I find that the statute of limitations to bring these causes of action grounded in fraud began

to run in September 2009. Because more than four years (approximately 11 years) have elapsed

since that time, Plaintiff's claims for fraudulent misrepresentation, mortgage fraud, and "fraud –
unclean hands" are time-barred, cannot be cured by amendment, and accordingly are dismissed
with prejudice.

### b.      Notary Fraud (Count 16)

In Count 16, Plaintiff alleges that the notarization of certain documents from the 2004 loan
closing violated state laws governing notary conduct and that such violations amount to notary
fraud. (DE 1 at 85–89 ¶¶ 335–52). Regardless of when Plaintiff learned of the purported notary
fraud, the claim is time-barred because more than 12 years (16 years) have passed since the alleged
violation. *See* Fla. Stat. § 95.031(2)(a). This claim cannot be cured by amendment, and accordingly
is dismissed with prejudice.

### c.      Forgery of Plaintiff's Signature (Count 17)

In Count 17, Plaintiff alleges that "Defendant altered the purported mortgage note by
intentionally forging Plaintiff's signatures on the documents" sometime prior to commencement
of the state foreclosure action. (DE 1 at 93 ¶ 357). Plaintiff knew of the alleged violation as
evidenced by the fact that she challenged the veracity of the signature on the note in her answer in
the state court proceedings. (DE 1 at 95 ¶ 365–66). Because Plaintiff brings this claim more than
four years (approximately 12) since she learned of the alleged forgery, this claim is time-barred,
cannot be cured by amendment, and accordingly is dismissed with prejudice.

### d.      Forgery by Robo-Signer (Count 18)

In Count 18, Plaintiff alleges that Defendant presented a "robo-signed" signature to the
state court during the foreclosure proceedings. (DE 1 at 97–99 ¶¶ 378–90). Specifically, Plaintiff
states that "[o]n or about June 10, 2011, Defendant presented to the court a purported note that
was endorsed by well-known Robo-Signer 'Cindy Riley'" and that "this endorsement stamp was

placed on the Note sometime after 7/21/2009 by employees or attorneys of [Defendant]." (DE 1 at 98–99 ¶¶ 383, 386). Because Plaintiff brings this claim more than four years (approximately 9) since she learned of the alleged robo-signed forgery, this claim is time-barred, cannot be cured by amendment, and accordingly is dismissed with prejudice.

### 6. Breach of Fiduciary Duty (Count 20)

In Count 20, Plaintiff alleges that Defendant's "negligence" and "carelessness" by its escrow agent, Bonifay Abstract & Title Company, Inc.'s, failure to identify the nature of the documents that Plaintiff purportedly signed at the 2004 loan closing amounted to a breach of fiduciary duty. (DE 1 at 14, 105 ¶¶ 9–10, 401–02). A breach of fiduciary duty claim is subject to the four-year statute of limitations for intentional torts. Fla. Stat. § 95.11(3)(o); *Halkey-Roberts Corp. v. Mackal*, 641 So.2d 445, 447 (Fla. 2d DCA 1994). Because this claim is time-barred by approximately 12 years, it cannot be cured by amendment, and accordingly is dismissed with prejudice.

### 7. Slander of Title (Count 25)

In Count 25, Plaintiff alleges that "Defendant falsely stated in the purported mortgage [that] they hold title to the property, as security." (DE 1 at 130 ¶ 516). The subject mortgage and promissory note were supposedly executed on September 15, 2004, though Plaintiff alleges that she did not sign them. (DE 1 at 14 ¶¶ 9–10). Florida law provides that "[a]n action for libel or slander" shall be commenced within two years. Fla. Stat. § 95.11(4)(g). This two-year limitations period likewise applies to actions for slander, or disparagement, of title. *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So.2d 204, 209 (Fla. 4th DCA 2002) (citing *Old Plantation Corp. v. Maule Indust., Inc.*, 68 So.2d 180 (Fla. 1953)) (summarizing the distinction between "slander of title" and "libel or slander" as "defamation of property interest" versus "defamation of

character of the person, respectively). Given that Plaintiff brings this claim more than two years (approximately 16 years) since Defendant allegedly disparaged her property interest by claiming to hold title thereto as security, this claim is time-barred. Even if the statute of limitations did not bar Plaintiff's claim, to the extent that Plaintiff is arguing that Defendant's bringing of the mortgage foreclosure action itself constituted slander of title, the claim remains properly dismissible because as a matter of law, a mortgage foreclosure action does not equate to slander of title. *See Dennis v. Am. Medical Express Corp.*, 763 So.2d 392, 393 (Fla. 3d DCA 2000) (citing *Palmer v. Shelby Plaza Motel, Inc.*, 443 So.2d 285, 286 (Fla. 2d DCA 1983)). For these reasons, Plaintiff's slander of title claim cannot be cured by amendment and accordingly is dismissed with prejudice.

### 8.   Breach of Contract – Violation of Housing and Urban Development Regulations (Count 28)

In Count 28, Plaintiff alleges that Defendant violated federal Housing and Urban Development ("HUD") regulations by failing to notify her that she was in default and to conduct an in-person meeting with her prior to filing the foreclosure action in state court. (DE 1 at 142–46 ¶¶ 573–82). Specifically, Plaintiff asserts that "Defendant did not have an admissible HUD statement at the foreclosure trial" in violation of 24 C.F.R. § 203.500 (requiring mortgagee supply borrower with notice payment delinquency) and § 203.604 (requiring face-to-face meeting or a reasonable effort to arrange such before three monthly payments due on the mortgage are unpaid). (DE 1 at 143 ¶ 576). In its Motion to Dismiss, Defendant argues that violation of these regulations does not give rise to an independent cause of action, as they are "condition[s] precedent to bringing a foreclosure action for certain types of federally-insured mortgage loans." (DE 15 at 18). As such, Defendant suggests that Plaintiff could have raised these issues in the state foreclosure action prior to the entry of final judgment. (*Id.*).

18

"HUD regulations do not give the borrower a private cause of action unless the regulations are expressly incorporated into the lender-borrower agreement." *Johnson v. World Alliance Financial Corp.*, 830 F.3d 192, 196 (5th Cir. 2016). Plaintiff does not allege that these, or any, HUD regulations were incorporated into the agreement between herself and Defendant, thereby giving rise to grounds for dismissal by this Count. However, assuming for the sake of analysis that the regulations were so incorporated, a breach of contract claim for violation of such terms would still be dismissible as filed well beyond the statute of limitations. In Florida, "[a] legal or equitable action on a contract, obligation, or liability founded on a written instrument" shall be commenced within five years. Fla. Stat. § 95.11(2)(b). Here, because Plaintiff alleges that Defendant did not provide notice of delinquency or conduct an in-person meeting prior to bringing the foreclosure action in 2008, any breach of contract claim she could have brought has been time-barred since 2013 or 2014.[4] (DE 1 at 143 ¶ 576, 14 ¶ 14). Given the time-bar, and alternatively, given that this claim may not even be viable as an independent cause of action, Plaintiff cannot cure these defects by amendment. Accordingly, Count 28 is dismissed with prejudice.

### D.   Criminal Laws

Defendant next argues that Plaintiff's claims seeking to enforce criminal statutes by way of this civil action should be dismissed with prejudice. (DE 15 at 17). Plaintiff disagrees, arguing that this Court has the authority to enforce federal criminal laws. (DE 19 at 9–10).

It is a longstanding principle of American jurisprudence that a civil litigant generally cannot seek the enforcement of criminal statutes. *Bass Angler Sportsman Soc'y v. U.S. Steel Corp.*,

---

[4] Plaintiff alleges that "[o]n or about July 9, 2009, Chase ("Chase"/"Foreclosing Defendant") filed a Lis Pendans [sic] and a foreclosure complaint against Plaintiff's property." (DE 1 at 14 ¶ 14). She directs the Court to Exhibit D attached to her Complaint, which is a Notice of Lis Pendens but not the state court foreclosure complaint. (DE 1 at 156).

324 F. Supp. 412, 415 (S.D. Ala. 1971), *aff'd sub nom. Bass Anglers Sportsman Soc'y of Am., Inc. v. Koppers Co., Inc.*, 447 F.2d 1304 (5th Cir. 1971) (citing *United States v. Claflin*, 97 U.S. 546 (1878)).[5] Rather, "criminal statutes can only be enforced by the proper authorities" of the federal and state governments (in this case, either the United States Department of Justice or the State of Florida, respectively). *See id.* One exception to this rule arises where the federal or state criminal statute provides a private right of action. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283–84. The threshold question in determining whether a federal criminal statute provides a private right of action is "whether Congress *intended to create a federal right*." *Id.* (emphasis in original). The inquiry should be answered in the negative when a "statute by its terms grants no private right to any identifiable class." *Id.* (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 576 (1979)) (internal quotation marks omitted). As such, for Plaintiff to sustain her counts seeking to enforce criminal laws through this civil lawsuit, each statute must authorize a private right of action.

### 1.     Violation of Identity Theft and Assumption Deterrence Act (Count 19)

In Count 19, Plaintiff alleges that Defendant violated the Identity Theft and Assumption Deterrence Act of 1998, 18 U.S.C. § 1028, by allegedly presenting documents to the state court that did not reflect the correct spelling of Plaintiff's name or her date of birth. (DE 1 at 100 ¶ 392). However, 18 U.S.C. § 1028, a federal statute criminalizing fraud related to identification documents, does not provide a private right of action. *See, e.g.*, *Obianyo v. Tennessee*, 518 F.App'x 71, 72 (3rd Cir. 2013) ("18 U.S.C. § 1028 . . . provide[s] no private right of action."). Because Plaintiff cannot bring a claim under 18 U.S.C. § 1028 in this civil case, it is due to be dismissed with prejudice.

---

[5] In *Bonner v. City of Prichard*, the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

### 2.      Exploitation of Elderly Persons or Disabled Adults (Count 22)

In Count 22, Plaintiff alleges that Defendant violated Fla. Stat. § 825.103, which criminalizes the abuse, neglect, and exploitation of elderly persons, by foreclosing on her property using "illegal tactics." (DE 1 at 119 ¶¶ 453–66). As a Florida criminal statute, enforcement is vested in the state attorney and does not provide a private right of action. Other courts have found the same. *See Ginder v. Bank of Am. Corp.*, No. 6:14-cv-1271-Orl-40DAB, 2015 WL 898595, at *4 (M.D. Fla. 2015); *Seniors Civil Liberties Ass'n, Inc. v. Morgan Stanley Smith Barney, LLC*, No. 8:11-cv-745-T-23TGW, 2011 WL 2669180, at *2 (M.D. Fla. 2011). Given that Plaintiff cannot bring a claim under § 825.103 in this civil action, it is dismissed with prejudice.

### 2.      Violation of Florida's Racketeer-Influenced and Corrupt Organization Act (Count 23)

In Count 23, Plaintiff alleges that Defendant violated Florida's Racketeer-Influenced and Corrupt Organization ("RICO") Act, Fla. Stat. § 895.03 by "engag[ing] in a pattern of criminal conduct including fraud and/or extortion, by the intentional use of unlawful and illegal tactics to foreclose on Plaintiff's property." (DE 1 at 123 ¶¶ 476). For these alleged violations, Plaintiff seeks various damages awards, including triple damages, punitive damages, and emotional damages. (DE 1 at 126). "The Florida criminal RICO statute allows a private plaintiff to bring a civil suit for equitable relief only." *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1301–02 & n.18 (11th Cir. 1998). Because Plaintiff does not seek equitable relief in bringing the Florida criminal RICO count, it is due to be dismissed. I cannot conceive of any equitable relief potentially available to Plaintiff at this juncture, and therefore I do not expect that Plaintiff will be capable of curing the deficiencies as to this claim. However, in an abundance of caution, I will

permit Plaintiff an opportunity to amend, and therefore this claim shall be dismissed without prejudice.

### E.      Remaining State-Law Claims

Having dismissed all of the foregoing counts with prejudice except for the Florida criminal RICO claim, including all of the federal claims, Plaintiff's remaining counts, which I did not address in this Order, consist of four state law claims: wrongful foreclosure (Count 5), intentional infliction of emotional distress (Count 24), quiet title (Count 26), and unjust enrichment (Count 27).  Plaintiff alleges in her Complaint that this Court has jurisdiction under 28 U.S.C. § 1331. (DE 1 at 4). Because Plaintiff now has no surviving federal claims and has established no other basis for subject-matter jurisdiction, the Court could decline to exercise supplemental jurisdiction over the state law claims. *See United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, (1966); *Vibe Miro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018) ("When all federal claims are dismissed before trial, a district court should typically dismiss the pendant state claims as well."). Notwithstanding, subject matter jurisdiction based on diversity under 28 U.S.C. § 1332(a) may exist, but Plaintiff's jurisdictional allegations are deficient and as such, prevent the Court from determining whether any basis remains to exercise jurisdiction over this lawsuit. Specifically, Plaintiff alleges that she is a citizen of Florida and that she seeks damages in excess of $75,000. (DE 1 at 4). She makes no mention, however, of Defendant's citizenship or any factual basis on which the Court could determine whether her damages plausibly exceed $75,000. Accordingly, I will grant Plaintiff leave to amend her Complaint to address the deficiencies in the jurisdictional allegations in accordance with the instructions provided below and to adjust her Complaint in light of the 24 counts that I have dismissed above. Failure to abide by the Court's directives in this regard could result in the dismissal of this action without prejudice.

## CONCLUSION

Based on the foregoing, and after careful consideration of the Parties' written submissions, the record as a whole, and the applicable law, it is hereby **ORDERED AND ADJUDGED** that:

(1) Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss (DE 15) is **GRANTED.**

(2) In light of dismissing Plaintiff's Complaint (DE 1), Defendant's Motion to Strike Plaintiff's Jury Trial Demand (DE 16), is **DENIED AS MOOT**.

(3) **If Plaintiff wishes to file an Amended Complaint, she must do so no later than November 27, 2020.** Any Amended Complaint must conform strictly to the rulings set forth in this Order, including the determination that Plaintiff's original complaint was an improper shotgun pleading. Moreover, Plaintiff may not attempt to re-plead any count which I have dismissed with prejudice, and additionally, any Amended Complaint must sufficiently allege that this Court has subject matter jurisdiction over this action. Because no federal claims remain, Plaintiff must properly establish subject matter jurisdiction based on diversity by alleging the amount in controversy exceeds $75,000 and the case is between citizens of different states. *See* 28 U.S.C. § 1332.

a. First, Plaintiff alleges that she is a citizen of Florida. To be clear, "'[f]or adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there.' . . . Domicile is not synonymous with residence; one may temporarily reside in one location, yet retain domicile in a previous residence." *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1341–42 (11th Cir. 2011) (citations omitted). Therefore, in amending her Complaint, Plaintiff should ensure that her citizenship allegation is based on her domicile.

b. Second, as mentioned above, Plaintiff failed to inform the Court of Defendant's citizenship. Because Defendant is a corporation, its citizenship is based on its state(s) of incorporation and principal place of business. *See* 28 U.S.C. § 1332(c)(1). For the Court to determine whether it has jurisdiction over this case, Plaintiff must clearly provide Defendant's state(s) of incorporation and principal place of business.

c. Third, Plaintiffs' representation that her damages exceed $75,000 is insufficient to establish that the jurisdictional minimum is met. "Ordinarily, a plaintiff need only plead an amount sufficient to satisfy the amount-in-controversy requirement in good faith[,]" which "will be second guessed only if it 'appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1342 (11th Cir. 2018) (alteration in original) (citations omitted). The burden of proof is raised to a preponderance of the evidence, "[h]owever, when the plaintiff pleads an unspecified amount of damages" in which case "there is simply no estimate of damages to which a court may defer." *Id.* (citations omitted). Because Plaintiff plead an unspecified amount of damages without providing an estimate or valuation related to their claims, Plaintiff has failed to satisfy the amount-in-controversy requirement.

d.  For these reasons, the Court cannot determine whether it has subject matter jurisdiction over this case based on diversity. Plaintiff must address these deficiencies to avoid dismissal of this action without prejudice.

**SIGNED** in Chambers in West Palm Beach, Florida, this 13th day of November, 2020.

Donald M. Middlebrooks
United States District Judge

cc:     Counsel of Record;

Yolette Sanguinetti
15310 Earhart Place
Wellington, FL 33414